IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA


E. FRANK HOPKINS                    :
SEAFOOD, CO., INC.,                 : CIVIL ACTION
                                    :
        Plaintiff                   :
                                    :
     vs.                            : NO. 2:17-cv-01558-JCJ
                                    :
ELIO OLIZI; CHERYL OLIZI; and       :
PURE FISH SEAFOOD, LLC,             :
                                    :
        Defendants                  :


**MEMORANDUM AND ORDER**

JOYNER, J.                                    June 15, 2017

    Before the court are Defendants' Motion to Dismiss (Doc. No.
6) and Plaintiff's Response in Opposition thereto (Doc. No. 8).
For the reasons set forth in this Memorandum, the Motion is
denied in its entirety.

## I. Background

    Plaintiff E. Frank Hopkins Seafood, Co., Inc. ("Hopkins") is
a wholesale seafood distributor located in Philadelphia,
Pennsylvania. (Compl. ¶ 3). To facilitate its business, Hopkins
has developed and maintains lists of customers and suppliers,
order histories for these parties, and pricing strategies.
(Compl. ¶¶ 11-13). To protect this information, which is not
available to the public, Hopkins limits which employees may

access it. (Compl. ¶¶ 15-16). Hopkins' employees are aware of the information's confidentiality. (Compl. ¶ 17).

Defendant Elio Olizi ("Mr. Olizi"), a resident of New Jersey, was employed by Hopkins until he quit in September 2016. (Compl. ¶¶ 4, 18). Because Mr. Olizi was responsible for negotiating prices with customers, he had access to the aforesaid non-public information and had contact with Hopkins' suppliers and customers, both current and prospective. (Compl. ¶¶ 22-23).

In August 2016, Mr. Olizi and his wife, Defendant Cheryl Olizi ("Mrs. Olizi"), formed Defendant Pure Fish Seafood, LLC ("Pure Fish") under the laws of New Jersey. (Compl. ¶ 30). Shortly thereafter, Mr. Olizi terminated his employment with Hopkins without notice. (Compl. ¶ 24). He then worked for Samuels and Son Seafood Co., Inc. ("Samuels"), a regional competitor of Hopkins, for three months. (Compl. ¶¶ 25-26). Upon ceasing his work there, Mr. Olizi sought to return to Hopkins but was denied. (Compl. ¶¶ 27-29).

Hopkins alleges that Defendants used information that Mr. Olizi obtained as an employee to entice existing and prospective customers of Hopkins to instead contract with Pure Fish. (Compl. ¶¶ 32-38). The Complaint also asserts that several existing customers actually terminated their contracts with Hopkins and became customers of Pure Fish, and that several prospective customers instead contracted with Pure Fish, all due to

Defendants' use of Hopkins' confidential information. (Compl. ¶ 40).

Counsel for Plaintiff corresponded with Mr. Olizi, demanding he cease and desist the alleged unlawful use of Hopkins' confidential information and return all such information to Hopkins. (Compl. ¶¶ 43-44). Mr. Olizi replied through counsel, denying possession of such information. (Compl. 45). In response to the alleged continued possession and use of Hopkins' information by Defendants, Hopkins sent two more letters repeating its demands, which were met with no reply. (Compl. ¶¶ 46-49). Hopkins filed a complaint on April 6, 2017, alleging tortious interference with contractual relations, tortious interference with prospective contractual and business relationships, misappropriation of trade secrets, unfair competition, conversion, civil conspiracy, and accounting. Subsequently, Defendants filed a Motion to Dismiss under Federal Rules of Civil Procedure 12(b)(3), 12(b)(6), and 12(b)(7), and Plaintiff filed a Response in Opposition thereto.

## II. Standard of Review

A pleading is "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. PRO. 8(a)(2). This is "in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting

<u>Conley v. Gibson</u>, 355 U.S. 41, 47 (1957)); <u>accord</u> <u>Palakovic v.</u>
<u>Wetzel</u>, 854 F.3d 209, 219 (3d Cir. 2017). Furthermore, in
considering dismissal under Rule 12(b)(6), we "accept all factual
allegations as true, construe the complaint in the light most
favorable to the plaintiff, and determine whether, under any
reasonable reading of the complaint, the plaintiff may be
entitled to relief." <u>Phillips v. County of Allegheny</u>, 515 F.3d
224, 233 (3d Cir. 2008) (citations omitted).

The complaint "does not need detailed factual allegations,"
but it does need "more than labels and conclusions, and a
formulaic recitation of the elements of a cause of action will
not do." <u>Twombly</u>, 550 U.S. at 555. While "[f]actual allegations
must be enough to raise a right to relief above the speculative
level," all that is required is "a reasonable expectation that
discovery will reveal evidence of [the alleged unlawful
activity]." <u>Id.</u> at 555-56. In other words, the claim must be
"plausible on its face," not merely conceivable. <u>Id.</u> at 570.

In <u>Ashcroft v. Iqbal</u>, the Supreme Court clarified that "[a]
claim has facial plausibility when the plaintiff pleads factual
content that allows the court to draw the reasonable inference
that the defendant is liable for the misconduct alleged." 556
U.S. 662, 678 (2009); <u>accord</u> <u>Palakovic</u>, 854 F.3d at 219. After
<u>Twombly</u> and <u>Iqbal</u>, the Third Circuit formulated a three-step
test:

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

Burtch v. Milberg Factors, Inc., 662 F.3d 212, 221 (3d Cir. 2011) (quoting Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010)).

### III. Discussion

Plaintiff's Complaint alleges seven counts arising from Defendants' alleged taking, retention, and use of Plaintiff's confidential information. Broadly, Defendants argue that Plaintiff failed to sufficiently plead facts in support of essential elements of its claims; that several of Plaintiff's tort claims are preempted by state statute, the elements of which are also not sufficiently pleaded; that Plaintiff failed to join an indispensable party under Federal Rule of Civil Procedure 19, as required by Rule 12(b)(7); and that Plaintiff failed to establish proper venue under 28 U.S.C. § 1391, as required by Rule 12(b)(3). We first address the 12(b)(6) motion with respect to each claim, then we address the 12(b)(7) and 12(b)(3) motions.

    A.    Motion to Dismiss for Failure to State a Claim under Federal Rule of Civil Procedure 12(b)(6)

        1.    Tortious Interference with Contractual Relations

The Pennsylvania Supreme Court expressly adopted the following standard for tortious interference with contractual relations:

> One who intentionally and improperly interferes with the performance of a contract (except a contract to marry) between another and a third person by inducing or otherwise causing the third person not to perform the contract, is subject to liability to the other for the pecuniary loss resulting to the other from the third person's failure to perform the contract.

Adler, Barish, Daniels, Levin and Creskoff v. Epstein, 393 A.2d 1175, 1183 (Pa. 1978) (quoting RESTATEMENT (SECOND) OF TORTS § 766 (AM. LAW. INST., Tentative Draft No. 23, 1977)). In their interpretation of this section, Pennsylvania courts have delineated four elements necessary to state such a claim:

(1) the existence of a contractual, or prospective contractual relation between the complainant and a third party;
(2) purposeful action on the part of the defendant, specifically intended to harm the existing relation, or to prevent a prospective relation from occurring;
(3) the absence of privilege or justification on the part of the defendant; and
(4) the occasioning of actual legal damage as a result of the defendant's conduct.

Ira G. Steffy & Son, Inc. v. Citizens Bank of Pa., 7 A.3d 278, 288-89 (Pa. Super. 2010) (footnote omitted) (quoting Strickland v. Univ. of Scranton, 700 A.2d 979, 985 (Pa. Super. 1997)). In their motion, Defendants do not contest element (2); however, they do contend that Plaintiff's Complaint does not demonstrate the existence of a contractual relation, address the lack of

privilege or justification on the part of the Defendants, or identify any consequent damage. (Motion to Dismiss, Doc. No. 6, p. 3).[1] The sufficiency of the pleading of those three elements is considered <u>seriatim</u>.

        a.   Existence of Contractual Relations

Where a case is not even in the discovery phase, requiring a plaintiff to list the specific contracts which it alleges have been harmed would be an extreme and unnecessary burden. <u>Aetna, Inc. v. Health Diagnostic Lab. Inc.</u>, No. 15-1868, 2015 WL 9460072, at *6 (E.D. Pa. Dec. 28, 2015). Here, Defendants argue that Plaintiff "fails to identify a single existing contractual relationship." (Motion to Dismiss, Doc. No. 6, p. 3). To the contrary, Plaintiff's Complaint alleges that: Plaintiff maintains a list of current and prospective customers, (Compl. ¶¶ 11-12, 34); a number of Plaintiff's customers have terminated their contracts with Plaintiff in order to contract with Defendants instead, (Compl. ¶ 39); and Defendants solicited Plaintiff's two largest customers, (Compl. ¶ 54). These allegations are more than mere legal conclusions and establish a reasonable expectation that discovery will reveal evidence of this element of the claim.

        b.   Absence of Privilege of Justification

Under Pennsylvania law, a plaintiff must make a prima facie showing that the defendant's interference was unjustified (i.e.,

---

[1] Defendants' brief lacks page numbers. For clarity, we consider page 1 to be the page following the Table of Authorities and beginning with "FACTS."

improper). <u>Ira G. Steffy & Son, Inc.</u>, 7 A.3d at 288 n.13 (citing <u>Triffin v. Janssen</u>, 626 A.2d 571, 574 n.3 (Pa. Super. 1993)). Broadly, "[t]he general issue is 'whether, upon a consideration of the relative significance of the factors involved, the conduct should be permitted without liability, despite its effect of harm to another.'" <u>Crivelli v. General Motors Corp.</u>, 215 F.3d 386, 395 (3d Cir. 2000) (quoting <u>Adler</u>, 393 A.2d at 1184 n.17). To determine impropriety, a defendant's conduct should be assessed with regard to the "'rules of the game' which society has adopted." <u>Adler</u>, 393 A.2d at 1184 (quoting <u>Glenn v. Point Park Coll.</u>, 272 A.2d 895, 899 (Pa. 1971)). More specifically, courts consider:

    (a)   the nature of the actor's conduct,
    (b)   the actor's motive,
    (c)   the interests of the other with which the actor's conduct interferes,
    (d)   the interests sought to be advanced by the actor,
    (e)   the social interests in protecting the freedom of action of the actor and the contractual interests of the other,
    (f)   the proximity or remoteness of the actor's conduct to the interference, and
    (g)   the relations between the parties.

<u>Id.</u> (quoting RESTATEMENT (SECOND) OF TORTS § 767 (AM. LAW INST. 1979)).

Due to the fact-intensive nature of weighing these factors, doing so before discovery is generally inappropriate. <u>See</u> <u>Odyssey Waste Servs., LLC v. BFI Waste Sys. of N. Am., Inc.</u>, No. Civ.A. 05-CV-1929, 2005 WL 3110826, at *7 (E.D. Pa. Nov. 18, 2005) (denying a motion to dismiss in part because the fact-intensive

inquiry "will require at least some discovery to resolve"); <u>Breon v. Waypoint Ins. Grp., Inc.</u>, No. 1:06-CV-2204, 2007 WL 1575225, at *3 (M.D. Pa. May 31, 2007) (denying a motion to dismiss in part because weighing the Restatement factors "is more appropriately reserved for summary judgment"). <u>But see</u> <u>Hosp. Assocs. of Lancaster v. Lancaster Land Dev., L.P.</u>, No. 07-cv-03955, 2008 WL 4444249, at *9-*12 (E.D. Pa. Sept. 30, 2008) (performing the seven-part analysis but finding that the facts pleaded were sufficient to deny a motion to dismiss). Instead, as Plaintiff argues, courts have held that alleging Defendants' knowing and purposeful intent to interfere with a contract is sufficient to satisfy the impropriety inquiry for the purposes of a motion to dismiss. <u>Odyssey Waste</u>, 2005 WL 3110826, at *7 (citing <u>Total Care Sys., Inc. v. Coons</u>, 860 F. Supp. 236, 242 (E.D. Pa. 1994)); <u>accord</u> <u>Breon</u>, 2007 WL 1575225, at *3.

In <u>Total Care</u>, it was sufficient that the plaintiff alleged the nature of the defendant's interfering conduct and that the defendant had a knowing and purposeful intent to interfere. 860 F. Supp. at 242. Similarly, it was sufficient that the plaintiff in <u>Breon</u> alleged that a defendant intended to induce a third party to terminate the plaintiff's employment contract, and that this defendant did not have any privilege or justification for doing so. 2007 WL 1575225, at *4. Here, Plaintiff alleges that: Defendants intentionally interfered with existing contracts,

(Compl. ¶¶ 34, 67); Defendants took and used confidential information in order to induce Plaintiff's customers to break their contracts with Plaintiff and contract with Defendants instead, (Compl. ¶¶ 34-40); and Defendants' actions were not privileged or justified, (Compl. ¶¶ 35-36). Therefore, Plaintiff has sufficiently pleaded this element of its claim.

        c.   Existence of Resultant Damages

For this element of tortious interference with contractual relations, a plaintiff must demonstrate that actual damages resulted from the defendant's conduct, and those damages must flow from the loss of the benefits of the contract or consequential, emotional or reputational losses. <u>Pawlowski v. Smorto</u>, 588 A.2d 36, 40 (Pa. Super. 1991). As with their prior assertions, Defendants aver — without further citation or argumentation — that Plaintiff failed to identify any damage resulting from Defendants' alleged conduct. To the contrary, Plaintiff alleges that because of Defendants' interference, customers have ended ongoing contracts with Plaintiff in order to become customers of Defendants, (Compl. ¶ 39), and that Plaintiff has suffered losses in excess of $75,000 as a result, (Compl. ¶¶ 41, 59).

Accepting all factual allegations as true and construing the Complaint in the light most favorable to Plaintiff, Plaintiff has pleaded sufficient facts to state a claim for tortious

interference with contractual relations that is not merely conceivable, but rather plausible. We can reasonably infer that Defendants are liable for the alleged offenses, and Defendants have fair notice of the claim and the grounds on which it rests.

1. Tortious Interference with Prospective Contractual and Business Relationships

The elements of a claim for tortious interference with prospective contractual relations mirror the elements of its non-prospective counterpart. A plaintiff must demonstrate: "(1) a prospective contractual relation; (2) the purpose or intent to harm the plaintiff by preventing the relation from occurring; (3) the absence of privilege or justification on the part of the defendant; and (4) the occasioning of actual damage resulting from the defendant's conduct." Kachmar v. SunGard Data Sys., Inc., 109 F.3d 173, 184 (3d Cir. 1997); accord Glenn, 272 A.2d at 898. In their motion, Defendants contend only that Plaintiff fails to plead the first element of its claim, a prospective contractual relation, which is considered below.

Although difficult to define, a prospective contractual relation "is something less than a contractual right, something more than a mere hope." Synthes (U.S.A.) v. Globus Med., Inc., No. Civ.A. 04-CV-1235, 2005 WL 2233441, at *7 (E.D. Pa. Sept. 14, 2005) (quoting Thompson Coal Co. v. Pike Coal Co., 412 A.2d 466, 471 (Pa. 1979)). To survive a motion to dismiss, a plaintiff must

establish a reasonable probability that but for the defendant's interference, a contract would have materialized. Id. (citing Santana Prods., Inc. v. Bobrick Washroom Equip., Inc., 401 F.3d 123, 140); accord Glenn, 272 A.2d at 898-99. The last pertinent principle, for which the Synthes court provides ample support, is that:

> [B]ecause such prospective relationships are "not susceptible of a definite, exacting identification," a plaintiff is not required to identify a potential contractual partner by name. Kelly-Springfield Tire Co. v. D'Ambro, 408 Pa. Super. 301, 596 A.2d 867 (Pa. 1991) (holding that plaintiff did not have to identify a specific potential purchaser to withstand motion to dismiss under state pleading standard); see also Dunlap v. Peco Energy, 1996 WL 617777 (E.D. Pa. Oct. 23, 1996) (finding that plaintiff's allegation that defendant had interfered with "a business expectancy in contracts . . . to the energy industry" sufficient for purposes of motion to dismiss); Amer. Health, 1994 WL 314313, at *14 (noting that "although . . . the amended complaint simply states that 'Plaintiff had and has prospects of contractual relations with home care patients found in the relevant geographic market,' I am persuaded by all of the allegations in the complaint that plaintiff has alleged more than a 'mere hope' of prospective relations with home health care patients").

2005 WL 2233441, at *7 (alterations in original).

In Synthes, the defendants filed counterclaims against the plaintiff for tortiously interfering with the defendants' prospective contractual relations by disparaging them in conversations with anticipated customers; these claims survived a motion to dismiss since it was not necessary to identify the specific contracts at issue. Id. at *6-*7. Here, Plaintiff pleaded the existence of confidential information regarding

prospective customers, (Compl. ¶¶ 23, 34-37), as well as the
existence of anticipated customers who were instead enticed to
contract with Defendants due to Defendants' access to such
information, (Compl. ¶ 40). It is alleged that by use of
Plaintiff's confidential information, Defendants succeeded in
inducing prospective customers of Plaintiff to instead contract
with Defendants. (Compl. ¶¶ 66-69). At this case's nascent, pre-
discovery stage, and considering the pleading standards under
Rule 8(a), Plaintiff has sufficiently pleaded this element (and
thus, this claim). Defendants' motion to dismiss this claim must
be denied.

2.    Misappropriation of Trade Secrets

Under Pennsylvania law, a claim for misappropriation of
trade secrets is governed by the Pennsylvania Uniform Trade
Secrets Act ("PUTSA"). 12 Pa. Cons. Stat. § 5308 (2014). PUTSA
defines "misappropriation" as:

(1)    acquisition of a trade secret of another by a person
       who knows or has reason to know that the trade secret
       was acquired by improper means; or
(2)    disclosure or use of a trade secret of another without
       express or implied consent by a person who:
       (i)   used improper means to acquire knowledge of the
             trade secret;
       (ii)  at the time of disclosure or use, knew or had
             reason to know that his knowledge of the trade
             secret was:
             (A)   derived from or through a person who had
                   utilized improper means to acquire it;
             (B)   acquired under circumstances giving rise to a
                   duty to maintain its secrecy or limit its
                   use; or

<blockquote>
<pre>
          (C)  derived from or through a person who owed a
               duty to the person seeking relief to maintain
               its secrecy or limit its use; or
     (iii) before a material change of his position, knew or
               had reason to know that it was a trade secret and
               that knowledge of it had been acquired by accident
               or mistake.
</pre>
</blockquote>

<u>Id.</u> § 5302. Defendants' motion argues that Plaintiff fails to
establish that "any of the alleged trade secrets were ever
acquired by or disclosed to any of the Defendants by improper
means or by accident or mistake."[2] (Doc. No. 6, p. 5). As
Plaintiff points out, even if Defendants' contention were true,
Defendants ignore subsections 5302(2)(ii)(B)-(C). So as to not
deny this part of the motion outright, we will consider the
sufficiency of the pleadings with respect to those subsections.

A duty of secrecy may arise where a defendant is made aware
that certain information may not be disclosed to third parties,
and the information itself is of a confidential nature; this is
the case even absent a confidentiality agreement. <u>EXL Labs., LLC
v. Egolf</u>, No. 10-6282, 2011 WL 880453 at *6 (E.D. Pa. Mar. 11,
2011); <u>see also</u> <u>Swift Bros. v. Swift & Sons, Inc.</u>, 921 F. Supp.

---

[2] PUTSA defines "trade secret" as:
     Information, including a formula, drawing, pattern, compilation
     including a customer list, program, device, method, technique or process
     that:
          (1)  Derives independent economic value, actual or potential,
               from not being generally known to, and not being readily
               ascertainable by proper means by, other persons who can
               obtain economic value from its disclosure or use.
          (2)  Is the subject of efforts that are reasonable under the
               circumstances to maintain its secrecy.
12 PA. CONS. STAT. § 5302. "Improper means" is defined as including, but not
limited to, "theft, bribery, misrepresentation, breach or inducement of a
breach of a duty to maintain secrecy or espionage through electronic or other
means." <u>Id.</u>

267, 277 (E.D. Pa. 1995) (holding that confidentiality agreements are not necessary for Pennsylvania law to protect trade secrets, such as customer lists, "if the other precautions taken by the plaintiff are sufficient").

Although EXL Laboratories dealt with a manufacturer-distributor relationship, not an employer-employee one, the court's discussion of a duty of secrecy applies with equal force here. In EXL Laboratories, one of the plaintiff's executives warned the board of a distributor that board members could not divulge the plaintiff's proprietary information to third parties. 2011 WL 880453, at *6. The court held that these circumstances, combined with the confidential nature of the information itself, satisfied subsection 5302(2)(ii)(B) and created a duty to secrecy. Id. Here, Plaintiff pleaded that its customer lists, as well as other information, are confidential, (Compl. ¶ 12), and that employees are aware of this confidentiality, (Compl. ¶ 17). Plaintiff further pleaded that Mr. Olizi was granted access to this information in order to perform his duties, (Compl. ¶¶ 22-23, 82), and that he was aware of the information's confidential nature, (Compl. ¶ 80). Lastly, it is alleged that Defendants used this information without Plaintiff's consent. (Compl. ¶ 35). Because Plaintiff has sufficiently pleaded, and Defendants do not contest, the existence and breach of a duty of secrecy, the motion to dismiss this claim can be denied without needing to

address the sufficiency of the pleadings regarding "improper means."

>    3.   Unfair Competition

Under Pennsylvania law, the tort of unfair competition is defined as follows:

> One who causes harm to the commercial relations of another by engaging in a business or trade is not subject to liability to the other for such harm unless . . . the harm results from . . . acts or practices of the actor determined to be actionable as an unfair method of competition, taking into account the nature of the conduct and its likely effect on both the person seeking relief and the public.

Bro-Tech Corp. v. Thermax, Inc., 651 F. Supp. 2d 378, 417-18 (E.D. Pa. 2009) (quoting RESTATEMENT (THIRD) OF UNFAIR COMPETITION § 1(a) (AM. LAW INST. 1995)); accord Giordano v. Claudio, 714 F. Supp. 2d 508, 521-22 (E.D. Pa. 2010); Bldg. Materials Corp. of Am. v. Rotter, 535 F. Supp. 2d 518, 526 n.4 (E.D. Pa. 2008); Synthes, 2007 WL 2043184, at *9; Air Prods. & Chem., Inc. v. Inter-Chemical Ltd., No. Civ.A. 03–CV–6140, 2003 WL 22917491, at *12 (E.D. Pa. Dec. 2, 2003). "Unfair competition" must not be construed as a catch-all for any wrongful business conduct, or to include all business torts. Giordano, 714 F. Supp. 2d at 522 (citing USX Corp. v. Adriatic Ins. Co., 99 F. Supp. 2d 593, 619 (W.D. Pa. 2000)). That said, the "improper use of another's confidential information may qualify as unfair competition 'even if the conduct is not specifically actionable under the rules relating to . . . misappropriation of trade secrets.'" Bro-Tech,

651 F. Supp. 2d at 418 (quoting RESTATEMENT (THIRD) OF UNFAIR COMPETITION § 1 cmt. g). Unfair competition thus encompasses "misrepresentation, tortious interference with contract, improper inducement of another's employees, and unlawful use of confidential information." Id. (quoting Synthes, 2007 WL 2043184, at *9). As discussed, Plaintiff has sufficiently pleaded its claim for tortious interference with existing and prospective contracts, thus providing at least one basis for the unfair competition claim to survive Defendants' motion. See supra Sections III.A.1-2.

For this count and others, Defendants also object that PUTSA preempts the common law tort claims brought by Plaintiff. (Motion to Dismiss, Doc. No. 6, p. 7-8) (citing 12 PA. CONS. STAT. § 5308). Indeed, Third Circuit courts have acknowledged PUTSA preemption for common law tort claims such as unfair competition, conversion, and civil conspiracy, among others.[3] Advanced Fluid Sys., Inc. v. Huber, 28 F. Supp. 3d 306, 324 (M.D. Pa. 2014) (citing various examples of such preemption). Defendants' argument ultimately fails, however, because "[w]hile this claim would be preempted . . . to the extent the information at issue is determined to be trade secret information, the claim may otherwise rest on confidential information which does [not] [sic]

---

[3] Thus, the preemption analysis that follows applies with equal weight to those subsequent claims made by Plaintiff.

qualify for such status."[4] Bro-Tech, 651 F. Supp. 2d at 418

(emphasis added); accord Youtie v. Macy's Retail Holding, Inc.,

653 F. Supp. 2d 612, 620 (E.D. Pa. 2009) ("[P]reemption exists to

the extent that [claims] are based on the same conduct that is

said to constitute a misappropriation of trade secrets."); see

also Triage Consulting Grp., Inc. v. Implementation Mgmt.

Assistance, Inc., No. 12-4266, 2013 WL 3283462, at *4 (E.D. Pa.

June 27, 2013) (holding that with respect to the plaintiff's

claim for intentional interference with contractual relations,

PUTSA and tort claims were "properly pled in the alternative,

even though the tort claims may ultimately be preempted by a

factual finding that the information in question is, in fact, a

trade secret"); PNC Mortg. v. Superior Mortg. Corp., No. 09-5084,

2012 WL 628000, at *25 n.19 (E.D. Pa. Feb. 27, 2012) (noting that

insofar as the plaintiff's conversion claim applies to

confidential information not rising to the level of trade

secrets, the claim is not preempted by PUTSA); Bro-Tech, 651 F.

Supp. 2d at 418 (holding that the plaintiff's unfair competition

claim is not preempted by PUSTA since "[i]t may happen at trial

that some or all of this information is found not to be trade

secret information, but nonetheless confidential and proprietary

in nature"). Finally, and most fatally here, a court should not

determine whether the information at issue constitutes a trade

_____

[4] In the original text, the court omits "not"; it is clear from context,
however, that this was a mistake.

secret without a fully developed record. Advanced Fluid, 28 F. Supp. 3d at 325 (citing Alpha Pro Tech, Inc. v. VWR Int'l LLC, 984 F. Supp. 2d 425, 447 (E.D. Pa. 2013)); see also N. Am. Commc'ns, Inc. v. Sessa, No. 3:14-227, 2015 WL 5714514, at *9 (W.D. Pa. Sept. 29, 2015) (denying a motion to dismiss and deferring the issue of whether information constitutes trade secrets until later, since "the issue of preemption should be addressed after discovery has been completed"); Kimberton Healthcare Consulting, Inc. v. Primary PhysicianCare, Inc., No. 11-4568, 2011 WL 6046923, at *5 (E.D. Pa. Dec. 6, 2011) (citing Hecht v. BabyAge.com, Inc., No. 3:10-CV-724, 2010 WL 3940882, at *5 (M.D. Pa. Oct. 6, 2010)) (allowing common law tort claims for misappropriation, unfair competition, and conversion to survive a motion to dismiss since it was inappropriate to determine whether the relevant information constituted a trade secret without discovery).

In Advanced Fluid, the plaintiff alleged not only misappropriation of trade secrets, but also that the defendants conspired to use a co-defendant as an operative within the plaintiff-company. 28 F. Supp. 3d at 324. Here, in contrast, Plaintiff arguably does not allege conduct other than that which would form the basis for a misappropriation of trade secrets claim; however, it remains unresolved whether the information itself constitutes trade secrets, and thus Defendants' motion is

denied in accordance with <u>Advanced Fluid</u>. Indeed, Plaintiff's Complaint anticipates such potential distinction, alleging that Defendants engaged in unfair competition by misappropriating confidential information <u>as well as</u> trade secrets. (Compl. ¶ 89). As such, this claim will survive Defendants' motion to dismiss.

      4.   Conversion

As Plaintiff points out, Defendants argue only that the conversion claim is preempted by PUTSA, not that Plaintiff failed to state a claim under Pennsylvania law. (Motion to Dismiss, Doc. No. 6, p. 8; Response in Opposition, Doc. No. 8, p. 33). For the same reasons set forth in the Unfair Competition section of this opinion, Plaintiff's claim for conversion survives Defendants' motion to dismiss. <u>See supra</u> Section III.A.4. While the claim will be preempted insofar as it deals with converted trade secrets, Plaintiff's Complaint also alleges conversion of confidential information. (Compl. ¶¶ 32, 98). Because it is inappropriate for us to determine which (if any) of Plaintiff's information constitutes trade secrets at this pre-discovery stage, Defendants' motion to dismiss this claim is denied.[5]

---

[5] Defendants' reliance on <u>Nova Design Techs., Ltd. v. Walters</u>, 875 F. Supp. 2d 458, 472-73 (E.D. Pa. 2012) is misguided. In that case, the plaintiff alleged the conversion of "its sandpaper trigger technology, specifically, the use of aluminum oxide sandpaper in a heat pack." <u>Id.</u> The plaintiff did not allege conversion of any other information. <u>Id.</u> This was a detailed, solitary allegation about which the court made its preemption determination in the context of summary judgment. <u>Id.</u> This contrasts sharply with the instant pre-discovery motion, as well as the multitudinous allegations that Defendants converted confidential information such as "records, reports, customer lists, customers' purchasing history, the names, addresses, home phone numbers, cell numbers and/or extension numbers of current and former customers, customer

5.  Civil Conspiracy

Proving civil conspiracy under Pennsylvania law requires showing: "(1) a combination of two or more persons acting with a common purpose to do an unlawful act or to do a lawful act by unlawful means or for an unlawful purpose; (2) an overt act done in pursuance of the common purpose; and (3) actual legal damage." Smith v. Wagner, 588 A.2d 1308, 1311-12 (Pa. Super. 1991). Pleading a claim of civil conspiracy also requires alleging a separate underlying tort. Boyanowski v. Capital Area Intermediate Unit, 215 F.3d 396, 405 (3d Cir. 2000) (citing Nix v. Temple Univ., 596 A.2d 1132, 1137 (Pa. Super. 1991); Pelagatti v. Cohen, 536 A.2d 1337, 1342 (Pa. Super. 1987)). Here, Defendants argue only that Plaintiff failed to satisfy this last requirement; i.e., sufficiently pleading a separate underlying tort. (Motion to Dismiss, Doc. No. 6, p. 9). Because we held above that Plaintiff has sufficiently pleaded common law tort claims such as tortious interference with existing and prospective contractual relations, unfair competition, and conversion, Defendants' argument fails, and their motion to dismiss this claim is denied. See supra Sections III.A.1-2, 4-5.

---

requirements, customer pricing information, contracts, printouts, pricings, pricing strategies, profit margins, confidential information received from customers, suppliers[,] vendors, and other third parties, prospective customer information and lists, Hopkins' established know-how," etc., any of which may or may not be a trade secret. (Compl. ¶ 34). As supported by the predominant approach of Pennsylvania courts, we simply do not have enough information at this stage to warrant supplanting a later determination by a more informed factfinder.

6.    Accounting

Pennsylvania law provides two methods for determining damages from a misappropriation of trade secrets: "one, the damages sustained by the victim (the traditional common law remedy), and the other, the profits earned by the wrongdoer by the use of the misappropriated material (an equitable remedy which treats the wrongdoer as trustee ex maleficio for the victim of the wrongdoer's gains from his wrongdoing)." Greenberg v. Croydon Plastics Co., Inc., 378 F.Supp. 806, 816-17 (E.D. Pa. 1974). Indeed, PUTSA provides for this possibility:

> Damages can include both the actual loss caused by misappropriation and the unjust enrichment caused by misappropriation that is not taken into account in computing actual loss. In lieu of damages measured by any other methods, the damages caused by misappropriation may be measured by imposition of liability for a reasonable royalty for a misappropriator's unauthorized disclosure or use of a trade secret.

12 Pa. Cons. Stat. § 5304; accord Advanced Research Sys., Inc. v. ColdEdge Techs., Inc., No. 3253 EDA 2012, 2014 WL 10979726, at *7-*8 (Pa. Super. Mar. 21, 2014).

Plaintiff's Complaint requests, as a separate action, "an accounting of all assets, income, revenues and other monies received by Defendants as a result of the theft of Hopkins' current and prospective customer contracts in order to determine the monetary damages suffered by Hopkins that are due and owing to Hopkins." (Compl. ¶ 112). This nebulous "theft of . . .

contracts" presumably refers to the common law tort claims alleged by Plaintiff as well as the claim of misappropriation of trade secrets. As discussed, <u>Greenberg</u>, <u>Advanced Research</u>, and PUTSA provide for the <u>remedy</u> of an accounting for the misappropriation of trade secrets; thus, we must determine separately whether Plaintiff has stated a <u>separate action</u> for an accounting under Pennsylvania common law.

Accounting as a separate action exists in a bifurcated manner. As Defendants point out, an accounting may be demanded in an action in assumpsit as a remedy at law. <u>Fudula v. Keystone Wire & Iron Works, Inc.</u>, 424 A.2d 921, 923 (Pa. Super. 1981) (citing PA. R. CIV. P. 1021). However, "[t]he mere fact that a remedy at law exists is not sufficient to oust equitable jurisdiction. The question is whether the remedy is adequate or complete." <u>Williams v. Finlaw, Mueller & Co.</u>, 141 A. 47, 48 (Pa. 1928). Thus, an action for accounting may be brought in equity "when the accounts are mutual or complicated or when discovery is needed and is material to the relief." <u>Fudula</u>, 424 A.2d at 923 (quoting <u>Setlock v. Sutila</u>, 282 A.2d 380, 381 (Pa. 1971)); <u>see also</u> <u>Holland v. Hallahan</u>, 60 A. 735, 736 (Pa. 1905) (rejecting a request for an accounting because determining damages "does not involve the examination of intricate and complicated accounts, and under our practice [the plaintiff] can obtain any information necessary to enable him to prepare for trial and properly to

present [the plaintiff's] case"); <u>Gloninger v. Hazard</u>, 42 Pa.

389, 401 (Pa. 1862) (rejecting equity jurisdiction given that the

accounts at issue were all on one side, not mutual). Lastly:

> [W]here the matter to be determined involves the accounts of
> different parties, to which debit and credit items attach
> and are intermingled, it can generally be held that a jury
> would not be qualified to state such an account. We might
> even go farther and say that equity will entertain
> jurisdiction where it is doubtful whether adequate relief
> could be had at law.

<u>Stuyvesant Ins. Co. v. Keystate Ins. Agency, Inc.</u>, 218 A.2d 294,

296 (Pa. 1966) (quoting <u>Williams</u>, 141 A. at 49); <u>accord</u> <u>Fudula</u>,

424 A.2d at 923.

Here, Plaintiff alleges an inability to fully determine

monetary damages resulting from Defendants' alleged misconduct,

(Compl. ¶ 112);[6] this evokes the <u>Williams</u> proposition that if a

remedy at law is inadequate, equitable jurisdiction may obtain,

141 A. at 48. Construing the complaint in the light most

favorable to Plaintiff, we can also reasonably infer that

Plaintiff's account could be implicated in determining damages,

making this a "mutual" situation described by <u>Stuyvesant</u>. As

such, Defendants' motion to dismiss Plaintiff's claim for an

---

[6] As this case proceeds into discovery, Plaintiff should not be content to
rely solely on the possibility of an accounting: "An accounting request is not
a substitute for plaintiffs' obligation to establish their damages through
discovery." <u>Centrix HR, LLC v. On-Site Staff Mgmt., Inc.</u>, No. 04-5660, 2008 WL
783558, at *17 (E.D. Pa. Mar. 25, 2008) (quoting <u>Arrowroot Nat. Pharmacy v.
Standard Homeopathic Co.</u>, No. 96-3934, 1998 WL 57512, at *12 (E.D. Pa. Feb.
10, 1998)). "An accounting should not be used to aide [sic] a party who has
otherwise failed to satisfy his burden of proof on the damages issue." <u>Id.</u>
(quoting <u>Genica, Inc. v. Holophane Div. of Manville Corp.</u>, 652 F. Supp. 616,
619-20 (E.D. Pa. 1987)).

accounting is denied.[7] In sum, all of Plaintiff's claims (Counts
I-VII) survive Defendants' motion to dismiss under Rule 12(b)(6).

   B.   MOTION TO DISMISS FOR FAILURE TO JOIN AN INDISPENSABLE PARTY UNDER
        FEDERAL RULE OF CIVIL PROCEDURE 19, PURSUANT TO RULE 12(B)(7)

Because some of the alleged unlawful activity occurred
during Mr. Olizi's three-month employment by Samuels, Defendants
argue that under PUTSA and through a theory of vicarious
liability, Samuels is an indispensable party under Rule 19.[8] Our
analysis is twofold:

> [W]e first must determine whether the absent insurers should
> be joined as "necessary" parties under Rule 19(a). If they
> should be joined, but their joinder is not feasible inasmuch
> as it would defeat diversity of citizenship (as would be the

---

[7] It should be noted that even absent Count VII, Plaintiff may have access to
an accounting as a <u>remedy</u> for each of its common law claims instead of as an
independent cause of action. Indeed, "[a]n accounting is an essentially
equitable <u>remedy</u>, the right to which arises generally from the defendant's
possession of money or property which, because of some particular relationship
between himself and the plaintiff, the defendant is obliged to surrender." <u>Am.
Air Filter Co., Inc. v. McNichol</u>, 527 F.2d 1297, 1300 (3d Cir. 1975) (emphasis
added) (citing <u>Holland</u>, 60 A. at 736 (Pa. 1905); <u>Shenango Furnace Co. v.
Fairfield Twp.</u>, 78 A. 937, 943 (Pa. 1911); <u>Crennell v. Fulton</u>, 88 A. 783, 785
(Pa. 1913)); <u>see also</u> <u>Boyd & Mahoney v. Chevron U.S.A.</u>, 614 A.2d 1191, 1196-97
(Pa. Super. 1992) ("Case law in Pennsylvania has long recognized equitable
accounting as an appropriate remedy for wrongful possession of property."). In
addition to the action for an accounting in Count VII, Plaintiff has requested
it as a remedy in each of Counts I-VI; and, even had Plaintiff not done so,
this court is bound to "grant the relief to which each party is entitled, even
if the party has not demanded that relief in its pleadings." FED. R. CIV. P.
54(c).
[8] As Plaintiff points out, Defendants in effect concede that Plaintiff has
stated a claim against Defendants: "The limited facts alleged by Hopkins in
its Complaint give rise to causes of action against Samuels under both the
theory of vicarious liability and under Pennsylvania statute." (Motion to
Dismiss, Doc. No. 6, p. 13). If Plaintiff has stated a claim against Samuels
under a theory of vicarious liability, that necessarily entails that Plaintiff
has stated a claim against Samuels' employee, Mr. Olizi (and through the
conspiracy claim, the other Defendants). And if Plaintiff has stated a PUTSA
claim against Samuels under 12 PA. CONS. STAT. § 5301(1), Defendants also
concede that Plaintiff has sufficiently pleaded that Mr. Olizi employed
"improper means" within the meaning of the statute. We must assume that
Defendants intended to state a contingency and argue in the alternative, not
contradict their 12(b)(6) motion.

case here), we next must determine whether the absent parties are "indispensable" under Rule 19(b).

Gen. Refractories Co. v. First State Ins. Co., 500 F.3d 306, 312 (3d Cir. 2007). Defendants concede that joining Samuels would defeat diversity and thus is not "feasible" under Rule 19(a). (Motion to Dismiss, Doc. No. 6, p. 13). As such, the only issue is whether Samuels is "indispensable" under Rule 19(b). To determine this, we must consider:

    (1)      the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties;
    (2)    the extent to which any prejudice could be lessened or avoided by:
        (A)   protective provisions in the judgment;
        (B)   shaping the relief; or
        (C)   other measures;
    (1)    whether a judgment rendered in the person's absence would be adequate; and
    (2)    whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

FED. R. CIV. P. 19(b); General Refractories, 500 F.3d at 319. Given their interconnectedness, the first two factors are considered jointly, followed by the remaining two factors.

       **1.**    **Prejudice to Samuels and the Existing Parties, and the Possibility of Lessening It**

Defendants argue that if Plaintiff's claims against Defendants are proved, then Samuels could also be implicated under PUTSA and a theory of vicarious liability. Even if this were true, vicarious liability has not been invoked in this case.

> The rules of vicarious liability respond to a specific need
> in the law of torts: how to fully compensate an injury
> caused by the act of a single tortfeasor. Upon a showing of
> agency, vicarious liability increases the likelihood that an
> injury will be compensated, by providing two funds from
> which a plaintiff may recover. . . . If the agent is
> available or has means to pay, invocation of the doctrine is
> unnecessary because the injured party has a fund from which
> to recover.

<u>Mamalis v. Atlas Van Lines, Inc.</u>, 560 A.2d 1380, 1383 (Pa. 1989).

As Plaintiff concedes, it has not pleaded a cause of action

against Samuels, (Response in Opposition, Doc. No. 8, p. 10), and

all of Plaintiff's requests for relief refer only to Defendants,

(<u>e.g.</u>, Compl. ¶ 60).

Plaintiff preemptively argues that Defendants also have no

right to seek indemnification from Samuels. (Response in

Opposition, Doc. No. 8, p. 9). We would add that even if

Defendants had such a right, it would still not necessitate

dismissal under Rule 19:

> "'[A] defendant's right to contribution or indemnity from an
> absent non-diverse party does not render that absentee
> indispensable pursuant to Rule 19.' <u>Janney Montgomery Scott</u>,
> 11 F.3d at 412 (quoting <u>Bank of Am. Nat'l Trust & Sav.</u>
> <u>Ass'n</u>, 844 F.2d at 1054). Indeed, defendants are free to
> pursue any claim for contribution or indemnification they
> might have against the absent insurers in a separate
> action."

<u>General Refractories</u>, 500 F.3d at 320. As such, the nonjoinder of

Samuels incurs no prejudice whatsoever to Samuels or the existing

parties.

      2.   Adequacy of Judgment

The third factor "allows the court to consider whether the relief it grants will prove an adequate remedy for the plaintiff." Id. at 320-21 (citing Provident Tradesmens Bank & Tr. Co. v. Patterson, 390 U.S. 102, 112 (1968)). Because Plaintiff has not stated any claims against Samuels or predicated on Mr. Olizi's short employment with Samuels, the nonjoinder of Samuels will not impede our ability to render adequate judgment for Plaintiff, should any if its claims be proved.

3. Adequacy of Remedy for Plaintiff in the Event of Dismissal

The final factor "counsels that courts should consider whether there is any assurance that the plaintiff, if dismissed, could sue effectively in another forum where better joinder would be possible . . . ."[9] Id. at 321. Here, Plaintiff does not contend that it could not sue just as effectively in state court; however, this is not nearly enough to outweigh the prior factors, which are overwhelmingly in favor of Plaintiff. As such, Defendants' motion is denied.

A. MOTION TO DISMISS FOR IMPROPER VENUE UNDER 28 U.S.C. § 1301, PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE (12)(B)(3)

---

[9] Plaintiff quotes General Refractories as saying that this factor "counsels strongly against dismissal . . . " (Response in Opposition, Doc. No. 8, p. 10) (alteration in original) (quoting 500 F.3d at 321). Presenting this as a generally applicable rule is misleading because the rest of the quoted phrase is "in this case." General Refractories, 500 F.3d at 321. And in that case, the court found it was likely impossible for the plaintiff to be able to bring its suit in state court given a controlling requirement imposed by the state supreme court, id.; such is not the case here.

Unlike a proper basis for jurisdiction, which a plaintiff is required to plead, improper venue is an affirmative defense; therefore, "on a motion for dismissal for improper venue under Rule 12 the movant has the burden of proving the affirmative defense asserted by it." Myers v. Am. Dental Ass'n, 695 F.2d 716, 724 (3d Cir. 1982). In their briefs, the parties focus their arguments on the sufficiency of the pleadings with regard to subsection (b)(2) of the general venue statute, which holds that a civil case may be brought in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated . . . ." 28 U.S.C. § 1391(b)(2) (2011). Defendants have not met this burden and this motion must be denied.

Although Defendants may fairly judge paragraph 8 of Plaintiff's Complaint to be conclusory, they ignore the rest of the Complaint. Plaintiff alleges that: Plaintiff is located in Philadelphia, (Compl. ¶¶ 3, 9); most (if not all) of Plaintiff's customers are in the Philadelphia region, (Compl. ¶ 10); Plaintiff maintains a customer list, as well as other information about these customers, (Compl. ¶¶ 11-12); Defendant Mr. Olizi worked for Plaintiff and had contact with such information and customers, (Compl. ¶¶ 18, 20-23); and Defendants have solicited and continue soliciting business from Plaintiff's Philadelphia-

area customers, as facilitated by Defendants' alleged use of Plaintiff's information, (Compl. ¶¶ 30, 32-40). With some imagination, there could be a few narrow gaps here; for example, the Complaint does not make it explicit that Mr. Olizi worked for Plaintiff in Philadelphia instead of remotely from his New Jersey home. That said, we reiterate that "the burden is upon the movant . . . to show that venue is improper under any permissible theory . . . ." Myers, 695 F.2d at 725-26. Given this standard and our ability to draw reasonable inferences to the benefit of Plaintiff, Defendants' motion is denied.

For the foregoing reasons, the instant motion is denied in toto. An order follows.